IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DORIS REDMOND and )
JEANNE McNICHOLS, )
)
Plaintiffs, ) Civil Action No.: 12 C 1474
)
v. )
) Suzanne B. Conlon, Judge
GONNELLA BAKING COMPANY and )
CLEMENTE CASTRO, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Doris Redmond sues her employer, Gonnella Baking Company, under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, claiming Gonnella failed to adequately respond to her claim of sexual harassment. She also claims intentional infliction of emotional distress under state law. Gonnella moves for summary judgment on both claims. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. Since 1997, Redmond has worked as a sanitor at a plant operated by Gonnella, a wholesale manufacturer of bread products in Chicago. Def. Facts ¶¶ 1, 2. As a sanitor, Redmond is responsible for cleaning Gonnella's baking equipment at the end of the day. *Id.* ¶ 5. On September 1, 2010, Redmond began her shift at 12:30 a.m. on the plant's second floor. *Id.* ¶ 14. At 2:30 a.m., fellow sanitors Clemente Castro and Alfredo Vera began their shifts, also on the second floor. *Id.* ¶ 15.

During a break at approximately 4:20 a.m., Vera told Castro that his schedule was going to be changed. *Id.* ¶ 16. Upon returning from break, Castro sought out Redmond and told her, "bitch, you told the boss to change [my] schedule." *Id.* ¶ 17. Redmond responded that she did not know what he was talking about and told him, "I'm not going to be too many more of your bitches." *Id.* ¶ 18. This was her way of telling him to stop calling her a bitch. Pl. Facts ¶ 6.

The sanitors had no supervisor in the building at the time, so Redmond left a voicemail for sanitation department supervisor Jerome Rio. Pl. Facts ¶ 8; Def. Facts ¶ 19. She asked Rio to "have a meeting with these guys on the second floor because they think I told you to change their time." Def. Facts ¶ 19. Redmond did not mention that Castro had called her a bitch or describe any of Castro's conduct. *Id.* ¶ 20.

After Redmond left the voicemail, she and Castro continued to argue. *Id.* ¶ 21. Castro called Redmond a bitch several more times. *Id.* Castro then pushed Redmond and pulled open the snaps on her uniform, exposing her bra. Pl. Facts ¶ 7. He smirked after exposing Redmond's bra. *Id.*

Redmond looked for the production supervisor but could not find him. *Id.* ¶ 8. Instead, she found the group leader of the bakers, Juan Echevarria, told him that Castro had pulled open her uniform, and asked him to accompany her back to her work area on the second floor. *Id.* ¶ 9. As Redmond attempted to return to her work station with Echevarria, Castro said, "Bitch, don't come this way," "don't come this way fucking bitch," and put his arm out to block her way. *Id.* ¶ 10. Castro gestured his hand up and down near his groin saying, "to both of you." *Id.* Redmond physically moved Castro out of her way and returned to the long moulder she had been cleaning. Def. Facts ¶ 31. There were no further incidents that shift. *Id.* Redmond stopped at

2

Gonnella's human resources office at the end of her shift to obtain some personnel documents. *Id.* ¶ 33. Two human resources employees were there at the time, but Redmond said nothing of the incident with Castro. *Id.*

The following day, September 2, 2010, Redmond and Castro reported to work at their normal times. *Id.* ¶ 35. When Castro started his shift, he approached Redmond and said, "bitch, you called the boss on me," "nobody don't like you," and "I could kill your ass and do something to your car and go back to Mexico." Pl. Facts ¶ 13. Redmond found production supervisor Jeff Kronfeld and told him Castro ripped open her shirt the previous day and just threatened to kill her. *Id.* ¶ 14; Def. Facts ¶ 38. Redmond asked Kronfeld to keep an eye on her and Castro, and Kronfeld did. Def. Facts ¶ 39. The parties do not agree whether Kronfeld told Redmond that Gonnella would investigate her concerns. *Id.* ¶ 39. There were no further incidents between Redmond and Castro that shift. Def. Facts ¶ 40.

On September 3, 2010, Redmond met with her union business agent and prepared a written statement describing the incidents with Castro, including that Castro opened her shirt. *Id.* ¶ 41. Following that meeting, the union agent called Gonnella's human resources director, Mark Schmidt, to tell him about the incidents between Redmond and Castro. *Id.* ¶ 42. Meanwhile, Redmond delivered a copy of her written statement to plant manager Ron Mazukelli and operations manager Michael Luchessi. *Id.* ¶¶ 44, 45. Schmidt then called plant manager Ron Mazukelli to tell him about the incidents. *Id.* ¶ 43. Schmidt and Mazukelli decided to speak with Redmond and Castro, but only after Redmond and Castro completed the shift they were scheduled to work together the morning of September 4, 2010. *Id.*

3

Before the meeting, Mazukelli told Schmidt he viewed surveillance video of the September 1, 2010, incident between Redmond and Castro. *Id.* ¶ 47. Mazukelli said the video depicted physical contact between Castro and Redmond, although Mazukelli described Redmond as the aggressor. *Id.* The video does not contain audio or depict the shirt-opening incident. *Id.* ¶¶ 48, 51.

Redmond did not report for her scheduled shift on Saturday, September 4, 2010, so Schmidt and Mazukelli talked only to Castro. *Id.* ¶ 54. Castro denied touching or threatening Redmond and calling her a bitch. *Id.* ¶ 54. Schmidt did not interview any other witnesses or employees that day. Pl. Facts ¶ 26. Redmond was not scheduled to work on Sunday, September 5, 2010, and Schmidt was not scheduled to work on September 6, 2010, which was Labor Day, so he and Mazukelli planned to talk to Redmond on Tuesday, September 7, 2010. Def. Facts ¶ 55. Schmidt recalls no plan to separate Redmond and Castro during his investigation. Pl. Facts ¶ 27. Roberto Vazquez was scheduled to be the production supervisor during Redmond's upcoming shifts. *Id.* ¶ 35. He was never told to keep an eye on Redmond and Castro. *Id.*

On September 6, 2010, Redmond and Castro were again scheduled to work the same shift. Def. Facts ¶ 56. During the shift, Redmond called police because she felt threatened by Castro and Vera, who were speaking Spanish around her rather than the usual English. Pl. Facts ¶ 36. The police arrested Castro for battery. Def. Facts ¶ 56; Dkt. 86-8, Ex. 24.

On September 7, 2010, Schmidt called Redmond and scheduled a meeting for September 9, 2010. *Id.* ¶ 58. During the meeting, Redmond told Schmidt about the September 1, 2010, incident, including that Castro had called her a bitch, kept getting in her face, and pulled open her shirt. *Id.* ¶ 59. She also described the September 2, 2010, incident when Castro got in her face,

4

told her he would make her quit, would do something to her car, and then "will go back to Mexico." *Id.* ¶ 59. She did not mentioned Castro's threat to kill her. *Id.* ¶ 60. At the end of the meeting, Redmond requested a leave of absence, which Schmidt granted. *Id.* ¶ 61. Redmond did not return to work until November 15, 2010. *Id.* ¶ 61.

Schmidt's investigation continued during Redmond's leave of absence. In all, Schmidt interviewed Redmond, Castro, Eschevarria, Vera, Mazukelli, and the union agent, and reviewed video from the surveillance camera multiple times. *Id.* ¶ 65. Schmidt ultimately concluded Castro violated Gonnella's policy against workplace violence on September 1, 2010, when he stuck out his arms to block Redmond's path. *Id.* ¶ 69. Schmidt met with Castro on October 15, 2010, to discipline him for violating the workplace violence policy. *Id.* ¶ 69. During the meeting Castro admitted he lied during his first interview when he denied opening Redmond's shirt. *Id.* As a result of that admission, Schmidt immediately suspended Castro, and terminated him on October 29, 2010. *Id.* ¶ 70, 71. Castro filed a grievance, and an arbitrator ordered Gonnella to return Castro to work. *Id.* ¶ 72.

Redmond recalls other incidents during her years at Gonnella that she contends were offensive. For instance, she would hear Castro use words such as "panocha," "culo," and "huevo culo," which she learned were Spanish for "vagina," "ass," and "shake your booty." Pl. Facts ¶ 4, Def. Facts ¶ 74. While cleaning, she once found bread on a rack shaped like a penis. Def. Facts ¶ 74. While on leave, she learned of sexually-explicit graffiti that included her name left on a locker in the men's room at Gonnella. *Id.* ¶¶ 74, 76. She asked a coworker to send her pictures of the drawing . *Id.* ¶ 76. Upon seeing them, she found the graffiti to be "embarassing." Pl. Facts ¶ 3.

5

Before returning to work on November 15, 2010, Redmond filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, alleging sexual harassment. Dkt No. 1, Ex. A at 2. She received a right-to-sue letter on December 2, 2011, *id.* at 1, and, along with co-plaintiff Jeanne McNichols, timely filed this case within 90 days on March 1, 2012. Redmond's claims consist of three counts. She alleges sex discrimination in violation Title VII, specifically, that she was subjected to sexual harassment and that Gonnella did not take adequate steps to prevent it or promptly respond to it (Count I). She alleges assault and battery against both Gonnella and Castro (Count V). Finally, she alleges a state law claim of intentional infliction of emotional distress against Gonnella and Castro (Count VI). The court previously dismissed Count V against both Gonnella and Castro. Redmond voluntarily dismissed Count VI against Castro.

Before the court is Gonnella's motion for summary judgment on Redmond's remaining claims against Gonnella of sexual harassment (Count I) and intentional infliction of emotional distress (Count VI).

## DISCUSSION

**I.      Summary Judgment Standard**

Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and Gonnella is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). Gonnella bears the initial burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If satisfied, this burden shifts to Redmond to go beyond the pleadings and present specific facts that show there is a genuine issue for trial. FED. R. CIV. P. 56(e)(2); *Kramer v.*

*Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). There is a genuine issue of material fact if the evidence is sufficient to support a reasonable jury verdict in Redmond's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). In considering Gonnella's motion, all facts and reasonable inferences are viewed in the light most favorable to Redmond. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II. Judicial Estoppel & Standing

Before turning to Gonnella's substantive arguments, the court addresses its arguments that Redmond may not proceed with her claims based on judicial estoppel and lack of standing.

Gonnella first contends Redmond is judicially estopped from bringing her claims because she did not initially disclose them in her Chapter 13 bankruptcy proceedings. As the court previously explained in denying Gonnella's motion to dismiss on this argument, Redmond filed an amended declaration and bankruptcy schedules on August 9, 2012, notifying the bankruptcy court and trustee of the potential value of this suit. Dkt. No. 48, Ex. 1. A debtor may inform the trustee of previously undisclosed legal claims as long as the bankruptcy proceeding is open. *See Rainey v. UPS, Inc.*, 466 Fed. Appx. 542, 544 (7th Cir. 2012). Redmond's bankruptcy proceeding was open when she amended her declaration. Therefore, she is not judicially estopped from bringing her discrimination-related claims.

Gonnella next argues Redmond lacks standing to bring her discrimination-related claims. Gonnella contends the claims belong to Redmond's bankruptcy estate and she may not assert them on her own behalf. Gonnella raised this argument in its motion to dismiss. The court agreed that Redmond could bring the claims only on behalf of the bankruptcy estate and gave her leave to amend her complaint. Dkt. No. 50 at 3.

Redmond never amended her complaint to reflect that her claims were brought for the benefit of her bankruptcy estate. Her bankruptcy proceeding has since been dismissed due to her failure to provide the bankruptcy court with copies of her tax returns and any tax refunds she received. Dkt. 80, Exs. A & B. Under 11 U.S.C. § 349(b)(3), an order of dismissal "revests the property" that was part of the bankruptcy estate with the previous owner or, in the case of property that came into being post-petition, with the debtor. *See In re Walter*, 199 B.R. 390, 392-93 (Bankr. C.D. Ill. 1996) (Coutrakon, J.). Accordingly, Redmond's discrimination-related claims have revested with her, and she has standing to assert them.

### III.     Sexual Harassment (Count I)

To survive Gonnella's motion for summary judgment on her sexual harassment claim, Redmond must clear two hurdles. First, she must identify evidence showing she was subjected to unwelcome sexual conduct directed at her because of her sex, that the conduct was severe or pervasive enough to create a hostile work environment, and that it was both objectively and subjectively offensive. *See Passananti v. Cook County,* 689 F.3d 655, 664 (7th Cir. 2012). Second, she must identify a basis for employer liability. *Id.*

Gonnella argues Redmond cannot establish severe or pervasive conduct that was both objectively and subjectively offensive. Whether a work environment was hostile requires a consideration of all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007). Gonnella argues that occasionally being called a bitch, finding bread in the shape of a penis, or overhearing others use the Spanish words for

8

vagina and ass were isolated instances of non-severe conduct that do not constitute a hostile environment. *See Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (derogatory statements that are relatively isolated or not directed at plaintiff do not create a hostile work environment).

However, Redmond also provided evidence Castro touched her in such a way as to unsnap her uniform, exposing her bra. "[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment." *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001). Although the shirt-opening was an isolated incident, even a single instance of sufficiently severe conduct may be enough to establish a hostile work environment. *Turner*, 595 F.3d at 686; *see also Hamilton v. Group O, Inc.*, 803 F. Supp. 2d 908, 911 (N.D. Ill. 2011) (Hibbler, J.) (single act of swiping fake penis against the cheek and lip of a coworker was sufficiently serve to create a hostile work environment). Viewing the evidence of Castro's alleged conduct in Redmond's favor, she has satisfied her burden of identifying evidence of a hostile work environment.

Gonnella argues that even if Redmond was subjected to a hostile work environment, there is no basis for employer liability. Redmond may establish a basis for employer liability two ways. She could show the offensive conduct was carried out by a supervisor, which she has not attempted to do. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 383 (7th Cir. 2012). Alternatively, she may show Gonnella is liable by its negligence in discovering or remedying the hostile environment. *Id.*

Gonnella argues it is not liable because it promptly investigated Redmond's accusations upon learning of them. It attributes any delay to Redmond's failure to follow Gonnella's Sexual

9

Harassment Policy, which directs employees to immediately report harassment to a supervisor, human resources, or by calling a designated phone number. However, human resources director Mark Schmidt took no steps to separate Redmond and Castro, even after he learned about the shirt-opening from Redmond's union agent on September 3, 2010. As a result, Redmond and Castro were scheduled to work together on September 4, 2010 and September 6, 2010. Gonnella concedes that Schmidt recalls no plan to separate Redmond and Castro during his investigation, and that they stopped working together only after Redmond requested a leave of absence on September 9, 2010. In addition, Roberto Vazquez was scheduled to work as production supervisor during Redmond's upcoming shifts, but was never instructed to keep an eye on Redmond and Castro.

To avoid liability, an employer must show it took care to prevent and promptly correct sexual harassment. 29 C.F.R. §§ 1604.11(d), (f); *EEOC v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 434 (7th Cir. 2012). Gonnella cannot establish that it took prompt corrective action as a matter of law given evidence it failed to promptly separate Castro from his alleged victim, or to instruct the shift supervisor to watch them. *See Soleau v. Ill. Dep't of Trans.*, No. 09 CV 3582, 2010 WL 2365195, at *4 (N.D. Ill. June 4, 2010) (Conlon, J.) (employer's response not appropriate as a matter of law based in part on its two-day delay in transferring alleged harasser).

Redmond attempts to establish employer liability on the additional basis that Gonnella did not take adequate steps to prevent harassment, specifically, that it offered sexual harassment training only in English, even though employees like Vazquez speak little English and mostly Spanish. However, Redmond has identified no role that Vazquez played in harassing her or

failing to report harassment, and admits that Castro primarily spoke English around her. Therefore, even if Gonnella trained its employees only in English (an assertion it contends is unsupported by the record), Redmond has failed to explain how it contributed to the alleged harassment.

In any event, a genuine issue of material fact regarding whether Gonnella adequately responded to Redmond's complaints of harassment precludes the entry of summary judgment in Gonnella's favor, and its motion for summary judgment on Redmond's sexual harassment claim is denied.

## IV. Intentional Infliction of Emotional Distress (Count VI)

Gonnella argues that it is entitled to summary judgment on Redmond's state law claim of intentional infliction of emotional distress for two reasons. In evaluating Gonnella's arguments, the court applies Illinois law, the same law the parties apply.

First, Gonnella contends that Redmond's claim is preempted by the Illinois Workers' Compensation Act, the exclusive remedy for accidental workplace injuries in Illinois. *See* 820 ILCS § 305/1 *et seq.*; *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1016 (7th Cir. 1997). Intentional torts committed by workers are considered "accidental" for purposes of the Act "unless the employer has commanded or expressly authorized" the act. *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1227 (Ill. 1990). The Act does not preempt claims for injuries inflicted by the employer or through its alter egos. *Id.* at 1226; *Thompson-Adams v. Renzenberger, Inc.*, No. 10 C 54, 2010 WL 1229380, at *2 (N.D. Ill. Mar. 25, 2010) (Zagel, J.).

Gonnella initially raised this argument in a motion to dismiss, which the court denied because the conduct underlying Redmond's allegations directly implicates Gonnella management. *See Toothman v. Hardee's Food Systems*, 710 N.E.2d 880, 886 (Ill. App. Ct. 1999) (a claim involving management's failure to prevent employee's bad behavior is not preempted by the Illinois Workers' Compensation Act). Consistent with her allegations, Redmond's evidence directly implicates Gonnella management. Accordingly, the Illinois Workers' Compensation Act does not preempt her intentional infliction of emotional distress claim.

Gonnella next argues that it is entitled to summary judgment because Redmond has not identified evidence satisfying the elements of her claim. The elements of a claim of intentional infliction of emotional distress are as follows: "(1) the defendant engaged in 'extreme and outrageous' conduct toward the plaintiff, (2) the defendant intended or recklessly disregarded the probability that the conduct would cause the plaintiff to suffer emotional distress, (3) the plaintiff endured 'severe or extreme' emotional distress, and (4) the defendant's conduct actually and proximately caused the plaintiff's distress." *Ulm v. Memorial Med. Ctr.*, 964 N.E.2d 632, 641 (Ill. App. Ct. 2012). "Courts are cautious in their treatment of emotional distress claims in the employment domain, because if discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action." *Safi v. Royal Jordanian Airlines*, No. 08 C 7365, 2010 WL 4339434, at *4 (N.D. Ill. Oct. 25, 2010) (Leinenweber, J.) (internal quotation marks and citation omitted).

Redmond contends ignoring complaints of harassment is sufficiently extreme and outrageous to establish emotional distress, citing in support *Doe v. Sperlik*, No. 05 C 1277, 2005 WL 3299818 (N.D. Ill. Nov. 30, 2005) (Hibbler, J.). In *Doe*, the court found allegations that a

school had failed to act on students' reports of molestation by their music teacher, which allowed the molestation to continue for years, stated a claim of intentional infliction of emotional distress. *Id.* at *6. Although Redmond has identified evidence Gonnella did not promptly separate her from Castro, it did not completely ignore her complaint. Gonnella investigated her allegations and eventually terminated Castro. A plaintiff must do more than merely establish a claim under Title VII to establish a claim of emotional distress. *See Bogie v. PAWS Chicago*, ___ F. Supp. 2d ___, No. 12 C 5887, 2012 WL 5557314, at *4 (N.D. Ill. Nov. 15, 2012) (Holderman, J.) (allegations of discrimination on their own usually do not support a claim for intentional infliction of emotional distress). Redmond has not offered evidence that Gonnella's response to her complaints was extreme and outrageous. She therefore cannot satisfy the elements of a claim of intentional infliction of emotional distress.

Accordingly, Gonnella's motion for summary judgment on Redmond's claim of intentional infliction of emotional distress is granted.

## CONCLUSION

Gonnella's motion for summary judgment is granted in part and denied in part. Gonnella is not entitled to judgment on Count I for sexual harassment because of material questions of fact regarding its response to Redmond's complaints. Gonnella is entitled to judgment on Count VI for intentional infliction of emotional distress. Redmond has not identified evidence of extreme and outrageous conduct by Gonnella.

ENTER:

February 28,
~~March 1~~, 2013

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge