IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DORIS REDMOND and JEANNE McNICHOLS, | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No.: 12 C 1474<br>) |
| v. | )<br>) Suzanne B. Conlon, Judge |
| GONNELLA BAKING COMPANY and CLEMENTE CASTRO. | )<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Jeanne McNichols sues her employer, Gonnella Baking Company, under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, claiming Gonnella discriminated against her because of her sex and subjected her to sexual harassment. She also claims Gonnella retaliated against her for reporting the discrimination and harassment. Gonnella moves for summary judgment on all of McNichols' claims. For the reasons set forth below, the motion is granted.

## **BACKGROUND**

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. Gonnella is a wholesale manufacturer of bread products operating in Chicago. Def. Facts ¶ 1. McNichols began working for Gonnella in 2000 as a baker. *Id.* ¶ 2. In 2002, she was promoted to the position of baker group leader. *Id.* ¶ 12. As group leader, McNichols' responsibilities included overseeing the production line to ensure compliance with posted specifications. *Id.* ¶ 13.

McNichols contends she was subjected to harassment on account of her sex while at Gonnella. She alleges her production supervisor, Roberto Vazquez, referred to her as "stupid girl" and "the girl." Pl. Facts ¶ 10. Vazquez once said he does not like working with women. *Id.* ¶ 7. While supervising McNichols, he yelled at her and rechecked the weights of her products. *Id.* ¶ 10. He once changed the setting on her oven, which ruined the bread she was baking and for which Vazquez blamed McNichols. *Id.* Male employees also complained Vazquez yelled at them. Def. Facts ¶ 65. McNichols joined seven male employees in signing a petition to have Vazquez removed because "he is very VERBALLY ABUSIVE he is always YELLING and INTIMIDATING us." Dkt. 88-10, Ex. 22.

McNichols contends she was also harassed when a male employee walked in the women's bathroom while she was on the toilet. Pl. Facts ¶ 16. Coworker Josue Alvarez repeatedly asked her for a date over the course of two weeks. *Id.* ¶ 19. Production supervisor Jeff Kronfeld told her to treat dough "like a good man." *Id.* ¶ 14. She learned about, but never saw, sexually explicit graffiti in the men's bathroom that included her name, and overheard coworkers use the word "puta," which is Spanish for whore. *Id.* ¶ 21; Def. Facts ¶ 59. She also witnessed two male employees ask group leader Juan Echevarria if he wanted to be raped. Pl. Facts ¶ 17. The two male employees later gave Echevarria a hickey. *Id.*

While group leader, McNichols was disciplined on seven occasions. According to the disciplinary reports, she failed to add hand-scaled ingredients to a batch of dough on December 16, 2002, *id.* ¶ 14, misplaced a scraper on February 18, 2007, *id.* ¶ 15, baked bread the wrong length on December 17, 2008, *id.* ¶ 17, failed to fill a flour duster causing a belt to tear in half on January 9, 2009 *id.* ¶ 19, ran a dough divider too slowly on February 10, 2010, *id.* ¶ 20, made

"crippled and un-sellable" breadsticks on March 8, 2010, *id.* ¶ 21, and put contaminated dough back into production on an unspecified date in April 2010, *id.* ¶ 22.

McNichols disputes the bases for some of the disciplinary reports. She contends the moulding belt tore in January 2009 not because she failed to fill the flour duster, but because it was previously damaged. Resp. Def. Facts ¶ 19. On other occasions, she contends she was disciplined for violations also committed by male employees, who were not disciplined. For example, she contends another group leader ran his line too slowly on two occasions but was not disciplined. Pl. Facts ¶ 26.

On May 16, 2010, production manager Tom King met with McNichols to discuss her poor work performance. *Id.* ¶ 24. King's assessment of McNichols' work performance was based on his own observations—he did not review her disciplinary history. Resp. Pl. Facts ¶ 33. During the meeting, King gave McNichols three options: (1) drastically improve her performance and remain group leader; (2) continue her poor performance and face additional discipline including possible termination; or (3) step down and become a baker again. Def. Facts ¶ 24. The following day, McNichol told production supervisor Kronfeld she would resign as group leader. *Id.* ¶ 25. She resumed her position as a baker, and was assigned to work the oven. Pl. Facts ¶ 37.

On December 27, 2010, Kronfeld moved McNichols from the oven position to pans. *Id.* Although the transfer did not a change to her pay or shift, she found the transfer to be degrading. *Id.* ¶ 38; Def. Facts ¶ 68.

On October 28, 2010, McNichols filed charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights alleging

discrimination based on her sex, religion, and retaliation. Dkt No. 1, Ex. B at 2. She received a right-to-sue letter dated January 30, 2012, *id.* at 1, and, along with co-plaintiff Doris Redmond, timely filed this suit within 90 days on March 1, 2012. McNichols' claims against Gonnella consist of three counts. She alleges sexual harassment by both a supervisor, and by coworkers that Gonnella did not adequately attempt to prevent or remedy (Count II). She alleges retaliation in response to her complaints of harassment (Count III). Finally, she alleges sex discrimination when Gonnella suspended her, demoted her, and transferred her (Count IV). She did not allege religious discrimination.

Gonnella moves for summary judgment on all McNichols' claims.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and Gonnella is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). Gonnella bears the initial burden of showing it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If satisfied, this burden shifts to McNichols to go beyond the pleadings and present specific facts that show there is a genuine issue for trial. FED. R. CIV. P. 56(e)(2); *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). There is a genuine issue of material fact if the evidence is sufficient to support a reasonable jury verdict in McNichols' favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). In considering Gonnella's motion, all facts and reasonable inferences are viewed in the light most favorable to McNichols. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

4

## II. Sexual Harassment (Count II)

To survive Gonnella's motion for summary judgment on her sexual harassment claim, McNichols must clear two hurdles. First, she must identify evidence she was subjected to unwelcome sexual conduct directed at her because of her sex, the conduct was severe or pervasive enough to create a hostile work environment, and it was both objectively and subjectively offensive. *Passananti v. Cook County*, 689 F.3d 655, 664 (7th Cir. 2012). Second, she must identify a basis for employer liability. *Id.*

Gonnella argues McNichols cannot establish severe or pervasive conduct that created a hostile environment. Whether a work environment was hostile requires a consideration of all circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007).

McNichols contends she established a hostile environment in two ways. First, she argues coworkers subjected her to harassment sexual in nature. Specifically, she contends Alvarez repeatedly asked her for a date over two weeks, coworkers used the Spanish word for whore among themselves, explicit graffiti in the men's bathroom included her name, and a coworker walked in on her in the women's bathroom.

The occasional use of offensive words not directed at McNichols does not create a hostile environment. *Mercer v. Cook County, Ill.*, No. 09 C 5565, 2012 WL 1044549, at ** 8-9 (N.D. Ill. Mar. 28, 2012) (Ashman, J.) (words like "nigger," "those bitches," and "oh, bitch" not directed at plaintiff did not create a hostile environment). Requests for a date over a short period

5

of time and similar isolated conduct does not create a hostile environment. *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (plaintiff did not establish a hostile environment with evidence coworker "asked her for dates, called her a 'dumb blond,' put his hand on her shoulder several times, placed 'I love you' signs in her work area and attempted to kiss her in a bar" and may have also "twice attempted to kiss her in the office"). Accordingly, McNichols has not established that coworkers' conduct created a hostile environment.

McNichols argues she established a hostile environment with evidence that production supervisor Roberto Vazquez treated her more harshly than male bakers. She contends Vazquez yelled at her, rechecked her weights, and made her up pick up crumbs of dough from under her machine, but did not subject male employees to these requirements. She also contends that Vazquez stated he did not like working with women.

According to McNichols, Vazquez's hostility to her but not to male employees constitutes sexual harassment. In support, she cites *Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999). But in *Smith*, female employees endured verbally abusive and physically threatening conduct, including a violent assault that drew blood, damaged ligaments, and required surgery. *Id.* at 533. *Smith* does not support McNichols' argument that disparate treatment alone creates a hostile environment. McNichols presented no evidence of the type of severe verbal abuse or physical threats that create an abusive workplace.

McNichols' evidence does not establish a hostile environment. Therefore, the court need not address whether she established a basis for employer liability. Accordingly, Gonnella's motion for summary judgment on her sexual harassment claim is granted.

## III. Sex Discrimination (Count IV)

A plaintiff may prove sex discrimination under either the direct or indirect method. *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). McNichols relies on the indirect method, which involves the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, McNichols must first establish a *prima facie* case of discrimination by showing: (1) she is a member of a protected class; (2) she reasonably met Gonnella's legitimate job expectations; (3) Gonnella took an adverse employment action against her; and (4) Gonnella treated her differently than similarly-situated persons outside her protected class. *See id.* at 802; *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). If McNichols satisfies her burden, Gonnella must articulate a legitimate, nondiscriminatory reason for its actions. *Burks*, 464 F.3d at 751. If it does, McNichols must show Gonnella's explanation is pretextual. *McDonnell Douglas*, 411 U.S. at 804; *Burks*, 464 F.3d at 751.

Gonnella does not dispute that, as a woman, McNichols is a member of a protected class. But it argues she cannot establish she suffered an adverse employment action, was meeting its legitimate job expectations, or that it treated male employees better.

### A. Adverse Employment Action

Adverse employment actions come in three general forms: (1) termination or reduction in benefits or financial terms of employment; (2) transfer or change in job duties that diminish an employee's skills and future job prospects; and (3) unbearable change in job conditions, such as a hostile work environment or conditions amounting to a constructive discharge. *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011). McNichols has not established a hostile

work environment, and so the court focuses on her arguments she suffered adverse employment actions in the form of (1) a suspension, (2) a demotion, and (3) a transfer.

McNichols' suspension in April 2010 for returning contaminated dough to the production line was an adverse employment action because it impacted her pay. *Smith v. Sibelius*, No. 09 C 7280, 2011 WL 3704146, at *4 (N.D. Ill. Aug. 17, 2011) (Kennelly, J.) (a suspension without pay is evidence of an adverse employment action), *aff'd*, 484 Fed. Appx. 38 (7th Cir. 2012). Although the parties did not explicitly state that McNichols' suspension was without pay, during her deposition she testified that she confirmed her suspension by looking at her pay stubs. Resp. Def. Facts ¶ 22 (citing McNichols Dep., Dkt. 104-2, Ex. B at 117:13-21). As the non-moving party, McNichols is entitled to an inference that her suspension was without pay. *Fleishman v. Continential Cas. Co.*, 698 F.3d 598, 603 n.1 (7th Cir. 2012) (inferences supported by evidence are viewed in the light most favorable to the nonmoving party).

McNichols' demotion was also an adverse employment action because it included a pay cut. *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (a demotion with a pay cut is evidence of an adverse employment action). Gonnella argues the demotion was not materially adverse because McNichols chose it from the options King gave her while discussing her poor work performance. But in *Hicks v. Forest Preserve Dist.*, 677 F.3d 781 (2012), the Seventh Circuit found a plaintiff who "was given a choice between taking a demotion or staying in his present role to face further disciplinary action up to termination," was essentially given "no choice at all." *Id.* at 787-88. The Seventh Circuit explicitly distinguished the case on which Gonnella relies, *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 1999), because

the employee in that case requested a demotion, turned down a transfer to a different supervisory position and, therefore, had not suffered an adverse employment action. *Hicks*, 677 F.3d at 788.

As for McNichols' transfer on December 27, 2010, from the oven to pans, she has not shown it was an adverse employment action. It did not erode her skills or adversely impact her job prospects because she transferred back to the oven on May 9, 2011. Dkt. 104-2 at 332:10:12 (McNichols Dep.). McNichols contends it impacted her pay because on March 18, 2011, plant manager Mazukelli denied her overtime. Denied overtime is an adverse employment action only if its impact was significant and recurring. *Lewis v. City of Chicago*, 496 F.3d 645, 653-54 (7th Cir. 2007). McNichols has not satisfied the significant or recurring standard because she did not specify the amount of overtime lost, and contends it occurred only once while on pans.

Accordingly, McNichols has identified evidence her suspension and demotion were adverse employment actions. She has not shown her transfer was an adverse employment action, and may not proceed with that part of her claim.

### B. Legitimate Job Expectations

Gonnella argues McNichols' performance did not meet its legitimate expectations when she returned contaminated dough to the production line. McNichols does not contest that returning contaminated dough into production violates Gonnella's Good Manufacturing Practices policy, or that King observed her conduct on videotape. Def. Facts ¶ 23. Therefore, McNichols cannot show she was meeting Gonnella's legitimate expectations when it suspended her for the violation in April 2010, and may not proceed with that part of her claim.

Gonnella argues McNichols also failed to meet its legitimate expectations based on the numerous other disciplinary warnings she received. McNichols argues these warnings were

based on information falsified by production supervisor Vazquez, and that he did not report male employees for the same conduct. When a plaintiff argues she was disciplined for falsified reasons, or that an employer applied discipline in a disparate manner, the legitimate expectation prong of the *prima facie* case merges with question of pretext. *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 678 (7th Cir. 2012) (disparate discipline); *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (falsified reasons).

To show pretext, McNichols must show Gonnella's reasons are unworthy of belief. *Gusewelle v. City of Wood River*, 374 F.3d 569, 575 (7th Cir. 2004). Pretext must be "more than just faulty reasoning or mistaken judgment;" it is a lie—a phony reason. *Scruggs v. Garst Seed Co.*, 587 F.3d 832. 838–39 (7th Cir. 2009). McNichols contends she established pretext with evidence Vazquez did not discipline male employees who engaged in similar conduct. She asserts Vazquez's statement that he does not like working with women is further evidence she was disciplined based on her sex. However, it is undisputed she was demoted by production manager King, not Vazquez. Although McNichols argues Vazquez influenced King, the statement of fact she cites (Pl. Fact ¶ 31) does not mention Vazquez, and the court disregards her unsupported assertion. *Hunter v. Jewel-Osco*, No. 11 C 8967, 2013 WL 53894, at *2 n.2 (N.D. Ill. Jan. 3, 2013) (Kocoras, J.) (assertions unsupported by record evidence may be disregarded).

Moreover, King testified at his deposition that McNichols' demotion was based on his personal observations of her work. Def. Facts ¶ 24 (citing King Dep., Dkt. 88-4, Ex. 8, at 88:18 - 89:1). In fact, he did not review, and lacked access to, her disciplinary file. King Dep., Dkt. 88-4, Ex. 8 at 91:4-19. McNichols identified no evidence to refute that testimony.

McNichols argues King's shifting reasons for her demotion also establish pretext. Specifically, she notes King testified at his deposition that he disciplined McNichols for poor product quality and a messy bakeshop. McNichols contends these reasons are not the ones King gave at the time, which included "inconsistency" such as products made the wrong length, and not being responsible for the equipment and the performance of others on her team. Pl. Facts ¶ 31 (citing May 16, 2010 King e-mail, Dkt. 104-15, Ex. O).

Pretext can be inferred from an employer's shifting or inconsistent explanations for an employment decision. *Silverman v. Bd. of Educ.*, 637 F.3d 729, 737 (7th Cir. 2011). King's reasons all concern poor product quality and McNichols' failure to fulfill her responsibilities as group leader. They are therefore not shifting or inconsistent, and do not establish pretext. *Montgomery v. DePaul Univ.*, No. 10 C 78, 2012 WL 3903784, at *7 (N.D. Ill. Sept. 7, 2012) (Feinerman, J.) (additional reasons for denying tenure consistent with original reasons do not establish pretext).

Finally, McNichols argues she has established pretext through evidence of disparate treatment. At the time of McNichols' demotion, King did not discipline fellow group leader Juan Echevarria, who had accumulated even more disciplinary warnings than McNichols. But, as discussed above, King did not review McNichols' disciplinary history, and therefore could not have known how her record compared to Echevarri's. In any event, King terminated Echevarria on October 4, 2010, for his poor attendance and work performance. Def. Facts ¶ 79.

McNichols has failed to establish her transfer was an adverse employment action, that she met her employer's legitimate expectations when she was suspended, or that the reasons for her

11

demotion were pretextual. Accordingly, summary judgment is granted on her sex discrimination claim.

## III. Retaliation (Count III)

Title VII protects employees from retaliation for complaining about prohibited discrimination. 42 U.S.C. § 2000e–3(a); *Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009). McNichols claims Gonnella retaliated against her for complaining about the following instances of sexual harassment: (1) disparate treatment by Vazquez, (2) the male employee who walked in the women's bathroom while she was on the toilet, and (3) Echevarria's hickey.

Retaliation can be established under either the direct or indirect methods. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). Common to both is the need to show the plaintiff engaged in a statutorily protected activity. *Id.* at 306, 309.

McNichols has not shown a protected activity because she could not have reasonably believed the conduct she challenged violated Title VII. *Kodl v. Bd. of Educ., School Dist. 45, Villa Park*, No. 05 C 3837, 2006 WL 2192014, at *12 (N.D. Ill. Aug. 1, 2006) (St. Eve, J.) (plaintiff need not succeed on her sexual harassment claim to show a protected activity, but must have reasonably believed the conduct violated Title VII), *aff'd*, 490 F.3d 558 (7th Cir. 2007). She admits she never reported the incidents involving Vazquez, the bathroom, or the hickey as being sexual harassment. Resp. Def. Facts ¶ 46. She cannot reasonably have believed Vazquez harassed her on account of her sex given the petition she and seven male coworkers signed complaining that Vazquez was yelling at them all. It is also not reasonable to believe that isolated offensive remarks, like Vazquez's that he does not like working with women, violate

Title VII. *Buford v. Oakton Cmty. Coll.*, No. 11 C 9261, 2012 WL 5936291, at *3 (N.D. Ill. Nov. 27, 2012) (Guzman, J.).

McNichols also cannot show she reasonably believed Echevarria's hickey to have violated Title VII. She admits after the incident, Echevarria told her he didn't mind the hickey, and may have even said he liked it. Def. Facts ¶ 57 (citing McNichols Dep., Dkt. 104-2, Ex. B at 265:21 - 266:4).

McNichols has not shown she engaged in a protected activity. Accordingly, summary judgment is granted on her retaliation claim.

## CONCLUSION

Gonnella's motion for summary judgment is granted on all of McNichols' claims. Gonnella is entitled to judgment on Count II for sexual harassment because McNichols has not shown a hostile environment. Gonnella is entitled to judgment on Count IV for sex discrimination because McNichols has not shown pretext. Gonnella is entitled to judgment on Count III for retaliation because McNichols has not shown she engaged in a protected activity.

ENTER:

February 29,
~~March~~, 2013

Suzanne B. Conlon
United States District Judge